UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KRISTINA KAY LOCKMAN,<br><br>    Petitioner,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Respondent. | Case No. 2:17-cv-00123-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Kristina Kay Lockman's Petition for Review of the Respondent's denial of social security benefits, filed on March 17, 2017. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 16, 2013, alleging disability beginning July 11, 2013. This application was denied initially and on reconsideration, and a hearing was conducted on December 2, 2015, before Administrative Law Judge (ALJ) Marie Palachuk. After hearing testimony from Petitioner, medical experts Haddon Alexander, M.D., and Nancy Winfrey, Ph.D., and from vocational expert Sharon Welter, ALJ Palachuk issued a decision finding Petitioner not disabled on December 21, 2015. Petitioner timely requested review by the Appeals Council, which denied her request for review on January 17, 2017.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the December 2, 2015 hearing, Petitioner was forty-one years of age. Petitioner completed the ninth grade, and her prior work experience includes work as a floor attendant, a gambling cashier, a surveillance system monitor, and an attendant at a children's institution.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity after her alleged onset

date of July 11, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's morbid obesity, obstructive sleep apnea, osteoarthritis of the knees, and chronic pain severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically considering Listings 1.00 and 3.00 pertaining to the musculoskeletal system and respiratory system. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner retained the RFC to perform sedentary work. She could occasionally climb ramps or stairs, balance and stoop. She could never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. She should avoid concentrated exposure to respiratory irritants and all exposure to hazards, and no walking on uneven terrain. (AR 27.)

Based upon the RFC assessment, the ALJ found Petitioner was able to perform her past relevant work as a floor attendant, gambling cashier, and surveillance system monitor. Accordingly, the ALJ did not proceed to step five.[1]

---

[1] If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after

**MEMORANDUM DECISION AND ORDER - 3**

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not

---

considering the claimant's residual functional capacity, age, education and work experience.

**MEMORANDUM DECISION AND ORDER - 4**

mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner argues the ALJ erred at step four, contending the ALJ improperly evaluated the opinion of examining physician J. Craig Stevens, M.D., and treating physician Michael Snyder, M.D. Petitioner asserts Dr. Stevens's consultative examination report was incomplete, and therefore the ALJ failed to fulfill her duty to develop the record by ordering a second consultative examination. Further, Petitioner argues the ALJ did not consider Petitioner's sleep apnea and its effect upon Petitioner's ability to work. Respondent disagrees, arguing the ALJ had no further duty to develop the record and appropriately weighed the physician opinions in the record. Respondent maintains also the ALJ found Petitioner's sleep apnea severe, and considered the effects from that impairment in assessing Petitioner's RFC.

**1. Standard for Reviewing Physician Testimony**

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of

**MEMORANDUM DECISION AND ORDER - 7**

disability, she must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

2.  **Physician Opinions**

    A.  **Opinions of Examining Physician J. Craig Stevens, M.D.**

Dr. Stevens performed a consultative examination on September 4, 2013, at the request of the Idaho Disability Determination Service. He was asked to evaluate Petitioner's complaints of fibromyalgia, chronic fatigue syndrome, osteoarthritis, polycystic ovarian syndrome with insulin resistance, depression, anxiety, and sleep apnea. (AR 311.) Dr. Stevens began his report with his own observation that Petitioner was "extremely overweight; she estimates her weight as 450 lbs. Although my scales do not extend to that range, I would concur with the estimation, adding that she is likely the heaviest person I have seen in my medical office this year." (AR 311.)

Dr. Stevens inquired about Petitioner's past medical and social history, her current pain level, and her employment history. He then conducted a physical examination, which was limited by Petitioner's "severe central obesity." Dr. Stevens did not have Petitioner sit on the examination table for fear of its possible collapse, thus preventing

him from performing certain physical examination measurements that could be performed only with Petitioner in a sitting position. However, Dr. Stevens evaluated upper extremity range of motion and reflexes, lumbar flexibility (she was unable to forward lumbar flex without losing balance), standing balance, grip strength, sensory deficits, ambulation, and gait. Dr. Stevens administered also the Folstein mini-mental status examination, on which Petitioner performed a "perfect 30/30." (AR 313.) Although Dr. Stevens ordered x-rays of both knees, the results were not available at the time he prepared his report.

Based upon his examination, Dr. Stevens concluded Petitioner's overall functional status was "profoundly affected by her severe degree of obesity," which he opined was likely the cause of her back pain and lower extremity pain, as well as the cause of the tendency for edema in the lower extremities and dyspnea on exertion interfering with proper sleep. These conditions, in his opinion, reasonably would lead to chronic fatigue syndrome. Dr. Stevens concluded Petitioner would be able to perform seated work, with proper furniture, with limited standing and walking due to her body habitus, and limited lifting and carrying of approximately twenty pounds. (AR 313-14.)

### B. Opinions of Treating Physician Dr. Michael Snyder

Dr. Snyder first treated Petitioner in July of 2014. At that time, Dr. Snyder described Petitioner's chronic pain as "well managed" and her insomnia "improved with Trazadone." (AR 327-28.) In September of 2014, Dr. Snyder completed a Physical Residual Functional Capacity Questionnaire. In Dr. Snyder's opinion, Petitioner could sit

for two hours at a time, for a total of at least six hours in an eight-hour day; stand for five minutes at a time, with a total time of standing and walking of less than two hours in an eight-hour day; alternate sitting and standing; and lift and carry ten pounds occasionally. However, Dr. Snyder was also of the opinion Petitioner would need to elevate her legs 50% of the time, limit the use of her hands and arms, and miss more than four days of work each month. (AR 29.) She continued to see Dr. Snyder and other practitioners, including Dr. Lucero, throughout 2015 at the Boundary Community Clinic.

### C. Opinions of Non-Examining Medical Expert Dr. Alexander

During the hearing before the ALJ, the non-examining medical expert, Dr. Alexander, testified that he reviewed the entirety of the medical record, including the x-ray reports Dr. Stevens had ordered for Petitioner's knees. Dr. Alexander testified the most significant medical issue was Petitioner's morbid obesity. (AR 43.) In his opinion, Petitioner would be limited to sedentary, and possibly light work, with the ability to lift and carry twenty pounds occasionally, no limitations upon sitting, but no more than two hours of standing or walking out of an eight-hour day in fifteen minute increments, and no ropes, ladders or scaffolds, with only occasional stairs, ramps, balancing, and stooping. (AR 44-45.) Dr. Alexander was of the opinion Petitioner had no limitations affecting manipulation, vision, or communication. (AR 45.)

### D. The ALJ's Analysis of the Medical Opinions

The ALJ discussed Dr. Stevens's findings, as summarized above, in great detail, along with all of the medical records and the testimony of the two medical experts (Dr.

Alexander and Nancy Winfrey, Ph.D.)[2] who testified at the hearing. (AR 23-26.) The ALJ noted that Dr. Alexander, a medical expert in internal medicine, had the benefit of reviewing not only Dr. Stevens's consultative report, but also the bilateral knee x-rays and the medical evidence of record. (AR 25, 28-29.) Because Dr. Alexander had special expertise, as well as the opportunity to review the longitudinal record, the ALJ gave Dr. Alexander's opinions significant weight. (AR 28.)

Nonetheless, the ALJ gave "some weight" to Dr. Stevens's opinion, because he was able to perform a comprehensive physical examination to support his opinion, despite the limitations caused by Petitioner's obesity. (AR 29.) In sum, the ALJ determined more weight should be given to Dr. Alexander's testimony, especially considering the limitations he ascribed to Petitioner's functional capacity were greater than those Dr. Stevens assessed. (AR 29.) In other words, the ALJ gave more weight to the opinions of the non-examining physician, who found Petitioner was more limited than did the examining physician.

The ALJ discussed also the opinions of treating physician Dr. Snyder. (AR 29.) The ALJ gave some weight to Dr. Snyder's opinion, finding the opinions regarding standing, walking, and sitting consistent with the opinions of Dr. Alexander, Dr. Stevens, and Dr. Lucero, another of Petitioner's treating physicians. (AR 29.) But, the ALJ rejected Dr. Snyder's more extreme opinions regarding Petitioner's need to elevate her

---

[2] Dr. Winfrey was asked to provide opinions regarding Petitioner's mental residual functional capacity, and had specialized expertise in clinical psychology. Petitioner did not challenge the ALJ's assessment of her mental RFC or of Dr. Winfrey's opinions.

**MEMORANDUM DECISION AND ORDER - 11**

legs throughout the workday, the limited use of her hands and arms, and projected missing work, finding them not consistent with Dr. Snyder's examination findings, his chart notes, and Petitioner's own testimony. (AR 29.)

   E.   Analysis

Petitioner first takes issue with Dr. Stevens's examination, calling it a "farce" because Dr. Stevens was unable to conduct a full examination. Accordingly, Petitioner argues the record was "undeveloped," and the ALJ should have ordered a second consultative examination. Petitioner contends also that Dr. Stevens's examination was "not provided in a usable format" because it did not provide a RFC, and therefore the conclusions were "worthless." Respondent disagrees, arguing no further record development was necessary and the ALJ reasonably considered and reconciled the various medical opinions to formulate Petitioner's RFC.

As noted by the Ninth Circuit, "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Additionally, "the ALJ should not be 'mere umpire' during disability proceedings," but must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Widmark v. Barnhart*, 454 F.3d 1063, (9th Cir. 2006). But, an "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d

**MEMORANDUM DECISION AND ORDER - 12**

453, 459–60 (9th Cir. 2001) (citing *Tonapetyan,* 242 F.3d at 1150).

Here, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. In addition to Dr. Stevens's consultative examination, the ALJ reviewed Petitioner's records from her treating physicians, Dr. Lucero and Dr. Snyder, as well as Dr. Snyder's opinions, and considered testimony from Dr. Alexander, a medical expert who reviewed all of the evidence before providing testimony at the hearing before the ALJ. Petitioner has not made a showing that the evidence was ambiguous, and attacks only Dr. Stevens's inability to conduct certain aspects of the physical examination which could be performed only with Petitioner seated.

There is no dispute by any of the medical practitioners that Petitioner's medical conditions were either caused or exacerbated by her morbid obesity. Indeed, Dr. Snyder indicated Petitioner's morbid obesity complicated her presentation. (AR 330.) And, during office visits, her treating physicians (Drs. Stevens and Lucero) and other medical care providers discussed the need for Petitioner to modify her lifestyle to avoid the health risks associated with obesity, which risks included exacerbation of her joint pain. (AR 226, 229, 321.) Thus, the fact Dr. Stevens could not conduct certain physical tests, which he could not do because of Petitioner's obesity, does not render the record inadequate; here, all of the medical providers agreed Petitioner's obesity limited her functional capacity. The ALJ thoroughly discussed the medical evidence in the record, and provided specific and legitimate reasons supported by substantial evidence in the record for giving

**MEMORANDUM DECISION AND ORDER - 13**

Dr. Stevens's evaluation some weight.

Next, Petitioner contends the opinion of Dr. Snyder as Petitioner's treating physician should have been given more weight, because he provided the specific basis for his findings, and these findings were not inconsistent with his medical records. Respondent disagrees, arguing the ALJ reasonably reconciled the medical opinions.

Here, the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for rejecting the more extreme limitations identified by Dr. Snyder. First, the ALJ discussed the consistency between the medical source opinions, specifically finding support for the aspect of Dr. Snyder's residual functional capacity assessment regarding Petitioner's ability to lift, sit, stand, and walk. But, the ALJ discussed Petitioner's credibility to find that the more extreme limitations ascribed by Dr. Snyder, which included his opinion Petitioner would miss work more than four days each month, to be without merit.

In the discussion regarding Petitioner's credibility, which Petitioner did not contest on appeal, the ALJ noted Petitioner had a long history of pain complaints yet her earnings records demonstrated consistent work. (AR 28.) The ALJ noted also that Petitioner alleged an onset date of July 2013, but treatment records dated July 9, 2013, which focused on her sleep apnea, reflected she reported "feeling better," with no discussion of her chronic pain. (AR 28.) The ALJ referenced that Petitioner later stopped taking her medications, reported feeling better, and she testified she stopped working for reasons other than her impairments. (AR 28.) Accordingly, the ALJ found Petitioner less

**MEMORANDUM DECISION AND ORDER - 14**

than fully credible.

During the hearing, Petitioner's attorney specifically asked the non-examining medical expert, Dr. Alexander, about the number of work days Petitioner might miss per month. (AR 46.) The ALJ noted Dr. Alexander's response that he "did not see anything acute to cause the type of fluctuation" that would cause her to miss work; Dr. Alexander commented also that Petitioner's physicians seemed to think the pain was adequately controlled. (AR 26.) The ALJ noted additionally that Petitioner reported her pain was "well controlled" and stable throughout 2015. (AR 25.)

The ALJ provided additional reasons for discounting Dr. Snyder's opinion, on the grounds that Dr. Snyder conducted a partial examination; chart notes contained no objective or clinical findings as a basis for the ascribed limitations; the limitations were inconsistent with Dr. Stevens's physical findings during the consultative examination; and the limitations contrasted with Petitioner's testimony. (AR 29.)

"Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Morgan v. Comm'r of Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). So long as there is more than a scintilla of evidence to support the interpretation of the evidence the ALJ provides, and that interpretation is based on the correct legal standards, it should not be overturned. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Petitioner's alternate interpretation of the medical evidence is insufficient

**MEMORANDUM DECISION AND ORDER - 15**

here, where the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for rejecting the portion of Dr. Snyder's opinion regarding Petitioner's anticipated missed work and other postural limitations, and for crediting Dr. Alexander's testimony and partially crediting Dr. Stevens's opinions. When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Morgan*, 169 F.3d at 599.

For the above reasons, the Court finds no error with regard to the ALJ's evaluation of the medical opinions from all the medical sources.

### 3. Petitioner's RFC

Next, Petitioner argues the ALJ erred by accepting the RFC provided by the examining physician, Dr. Stevens, because it was incomplete. Accordingly, Petitioner contends that Dr. Alexander's reliance upon Dr. Stevens's RFC assessment was in error, and consequently there was no support for the ALJ's RFC assessment. In addition, Petitioner asserts the ALJ failed to consider the effects of Petitioner's sleep apnea and obesity, and to incorporate those effects in the RFC assessment. Respondent argues the ALJ was required to evaluate all of the evidence in the record, and base the RFC on the entirety of the record. Respondent contends the ALJ did so here by considering the physician opinions, and reconciling them with the medical evidence, to formulate Petitioner's RFC. Respondent notes also that the ALJ discussed Petitioner's sleep apnea and its effects throughout the written opinion, and there was no error.

As discussed above, the ALJ appropriately reconciled the medical evidence and

formulated Petitioner's RFC. The ALJ set forth detailed explanations and interpretations explaining why Dr. Snyder's opinion was entitled to only partial weight; these explanations and interpretations were supported by clinical evidence, as reflected in the medical records. It was the ALJ's responsibility to resolve conflicts in the medical testimony, and resolve any ambiguities. *Morgan*, 169 F.3d at 595. While Petitioner clearly disagrees with the ALJ's credibility determinations and the ALJ's resolution of conflicting medical testimony, a disagreement over evidence is not enough for the Court to reverse the ALJ.

Petitioner's alternative argument that the ALJ neglected to consider other severe impairments is essentially an argument that the ALJ's RFC finding was erroneous. The RFC is the most a person can do, despite her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* SSR 96–8p, 1996 WL 374184, at *5; *accord* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. Social Security Ruling ("SSR") 96–8p (1996).

As part of her step four determination, the ALJ determined Petitioner's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545; Soc. Sec. Ruling 96–8p (July 2, 1996) ("SSR 96–8p"), 1996 WL 374184. The ALJ determined Petitioner was capable of sedentary

work, with some physical limitations as set forth above, all of which were related to her obesity.[3] At step four, the ALJ found that Petitioner was not disabled because she retained the RFC to perform her past relevant work. This conclusion rested on the testimony of two medical experts (Drs. Alexander and Winfrey), a vocational expert, and a thorough review of the medical evidence of record as well as consideration of Petitioner's own testimony about the limiting effects of her pain.

The ALJ discussed Petitioner's sleep apnea in the context of Petitioner's credibility. (AR 28.) The ALJ noted that, once Petitioner began using a CPAP machine, she reported she was "finally getting sleep" and "feeling better," with no mention of her chronic pain. (AR 28.) Petitioner later reported she was sleeping "fine." (AR 28.) The ALJ discussed also that Petitioner reported excessive daytime sleepiness, but was sleeping well on 10mg. of Ambien. (AR 24.) In other words, the ALJ found Petitioner less than fully credible with regard to the limiting effects of her sleep apnea, and adequately considered the evidence in the record in formulating Petitioner's RFC. Any limitations caused by Petitioner's sleep apnea were therefore not supported by substantial evidence. Moreover, as the ALJ discussed, the medical evidence suggested Petitioner's excessive daytime sleepiness had either been treated such that she no longer appeared to suffer from it, or that it had been adequately controlled such that the symptoms did not

---

[3] Petitioner argues the ALJ failed to consider the effect obesity had upon her ability to perform routine movement. However, the ALJ considered Dr. Stevens's, Dr. Snyder's and Dr. Alexander's opinions, all of which focused on Petitioner's limited ability to sit, stand, walk, stoop, and crouch. All of the medical providers were of the opinion these activities were affected by Petitioner's morbid obesity, as discussed above.

**MEMORANDUM DECISION AND ORDER - 18**

appear to pose an obstacle to performing work-related activities.

The Court finds no error with regard to the ALJ's RFC assessment.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Commissioner's decision, finding that the ALJ's determination was not the product of legal error and was supported by the record as a whole.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: May 1, 2018

_____
Honorable Candy W. Dale
United States Magistrate Judge